# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| SAMUEL TAYLOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | No. 4:11-CV-2250 NAB |
| | ) | |
| IAN WALLACE,[1] | ) | |
| | ) | |
| Respondent, | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2] After reviewing the case, the Court has determined that Petitioner is not entitled to relief. As a result, the petition will be dismissed.

### **Background**

Petitioner was charged with one count of forcible rape in the first degree, in violation of Mo. Rev. Stat. § 566.030, for knowingly having sexual intercourse with D.M.A. ("Victim") by the use of forcible compulsion and, in the course of the

---

[1] At the time Petitioner this action, Penny Milburn was the Warden of Southeast Correctional Center, where Petitioner is incarcerated. Ian Wallace is the current Warden of the facility and will be substituted as the proper party Respondent. See Rule 2(a) of the Rules Governing Section 2254 Cases.

[2] The parties consented to the jurisdiction of the undersigned magistrate judge to resolve this proceeding. See 28 U.S.C. § 636.

offense, inflicting serious physical injury to Victim. Resp't Ex. B at 8, 11. A jury found Petitioner guilty of the charged offense, and the court sentenced Petitioner to twenty-five years' imprisonment. Id. at 1, 52, 57-59.

On direct appeal, Petitioner raised two points: (1) that the trial court erred in overruling his motion for judgment of acquittal because there was insufficient evidence showing that Petitioner was the man who attacked Victim and (2) the trial court erred in overruling his motion for judgment of acquittal because there was insufficient evidence showing that Petitioner had sexual intercourse with Victim, for the evidence created serious doubt that any penetration occurred. Resp't Ex. E at 3.

The Missouri Court of Appeals for the Eastern District affirmed the conviction and sentence, finding the evidence sufficient to support the conviction. Id. at 4-6. In its decision, the appellate court found the facts as follows:

> When she was walking home from a party on the evening of March 11, 2004, Victim was approached by a young, black man, who asked Victim to buy some drugs. When Victim said "No," the man hit her on the head, causing Victim to lose consciousness and fall. When Victim regained consciousness, the man was lying on top of her, and she could feel his erect penis touching her waist and the area around her vagina. The man said something regarding taking off Victim's underwear. Victim stated that she "felt him at the point of getting ready to enter" her and then he knocked her out a second time.
>
> When Victim regained consciousness, it was still dark, and she noticed that the underwear she had been wearing was gone, along with her shoes, purse and keys. Victim walked home and called the police, who came and took Victim to the hospital.

> At the hospital, the treating nurse and physician found that Victim had suffered multiple injuries to her face, neck, both knees, and her ankle. The treating physician also found vaginal tears on Victim consistent with recent trauma, as they were such that would heal within a week. They physician found no semen on Victim's vagina or anywhere else on her body. The physician did not perceive Victim to be under the influence of any drugs, and so did not administer any drug tests on Victim.
>
> Victim's dress had several semen stains on the back skirt area. DNA tests confirmed the semen came from [Petitioner]. Victim's underwear, shoes, and keys were found on the side of a building near where the assault had taken place. Victim's purse was never recovered.

Resp't Ex. E at 2-3.

Petitioner argued in his first point on appeal that he should have been acquitted because of inconsistencies in Victim's testimony. The Missouri Court of Appeals noted that there were discrepancies in Victim's testimony immediately after the attack and at trial. The court found, however, that the inconsistencies were not too great and that such inconsistencies were a matter for the jury to resolve. Petitioner argued in his second point on appeal that he should have been acquitted because Victim picked another person out of a police lineup as the attacker and because there was no evidence that penetration occurred. The appellate court again noted that it was the jury's province to weigh witness' testimony and that Victim's testimony, along with the evidence of vaginal tears, consistent with recent trauma, supported the jury's verdict. Id. at 4-6.

-3-

Petitioner filed a timely motion for postconviction relief under Missouri Supreme Court Rule 29.15. Resp't Ex. F at 1. In an amended motion, Petitioner argued that trial counsel was ineffective for (1) failing to object to the prosecutor's alleged improper re-direct questioning of Detective Deborah Oliver, (2) failing to object and to request a mistrial when Detective Oliver stated that Petitioner had told her he stopped using drugs at the end of 2004 but had gone to jail twice in 2005 because such testimony constituted evidence of prior and uncharged crimes and bad acts, and (3) failing to object and to request the trial court to instruct the jury to disregard the prosecutor's closing argument regarding the fact that Victim had to be deposed questioned, and "undergo vigorous nitpicking" in the courtroom, which improperly appealed to the jurors' passions and prejudices. Resp't Ex. F at 21-24. The motion court denied relief after holding an evidentiary hearing. Id. at 53-62.

Petitioner raised the same three claims of ineffectiveness of counsel on appeal from the denial of his postconviction-relief motion. The Missouri Court of Appeals affirmed. The state appellate court applied the ineffective assistance of counsel standard set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and agreed with the motion court that Petitioner had failed to show either that counsel's performance was unreasonable or that Petitioner was prejudiced. As to each of Petitioner's points, the appellate court found that the decision not to object

was reasonable trial strategy and that, in light of the overwhelming evidence of Petitioner's guilt, Petitioner could not demonstrate prejudice. Resp't Ex. I at 4-10.

Petitioner filed the instant petition for writ of habeas corpus on December 20, 2011, which is the date he placed it in the prison's institutional mail system.

## Grounds for Relief

    1. The trial court erred in overruling his motion for judgment of acquittal because there was insufficient evidence to demonstrate that he was the person who attacked Victim.

    2. The trial court erred in overruling his motion for judgment of acquittal because there was insufficient evidence showing that Petitioner had sexual intercourse with Victim as the evidence created serious doubt that any penetration occurred.

    3. Trial counsel was ineffective for failing to object to the prosecutor's alleged improper re-direct questioning of Detective Deborah Oliver.

    4. Trial counsel was ineffective for failing to object and to request a mistrial when Detective Oliver stated that Petitioner had told her he stopped using drugs at the end of 2004 but had gone to jail twice in 2005 because such testimony constituted evidence of prior and uncharged crimes and bad acts.

    5. Trial counsel was ineffective for failing to object and to request the trial court to instruct the jury to disregard the prosecutor's closing argument regarding the fact that Victim had to be deposed questioned, and "undergo vigorous nitpicking" in the courtroom, which improperly appealed to the jurors' passions and prejudices.

## Standard

"In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." Lomholt

v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. §2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir. 2004).

**Discussion**

1. Ground One

In ground one of the petition, Petitioner argues that trial court erred in overruling his motion for judgment of acquittal because there was insufficient evidence to demonstrate that he was the person who attacked Victim. Petitioner argues that in light of inconsistencies in Victim's out-of-court statements, her initial identification of another man in the lineup as her assailant, the possibility of a previous consensual sexual relationship with Petitioner, and the imperfection of DNA analysis, the "states [sic] evidence was simply too stark for any rational trier of fact to believe that Petitioner was the assailant beyond a reasonable doubt . . . ." Pet. Supp. at 6. Petitioner argues that the Missouri Court of Appeals' decision was contrary to the precedent established by Jackson v. Virginia, 443 U.S. 307 (1979), in that the appellate court "merely recited all of the facts comultively [sic] without analyzing whether each or any of those facts established an essential elements [sic] of the count of conviction beyond a reasonable doubt." Id. at 3.

Respondent argues that Petitioner applies Jackson incorrectly because, under Jackson, it is the responsibility of the jury, not the court, to determine what conclusions to draw from the evidence at trial. Respondent maintains that the appellate court applied the correct standard and that its decision was reasonable.

In reviewing a claim of insufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the

prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original). In applying this standard, the scope of review is extremely limited. The Court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and the Court must defer to that resolution. Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003).

In its opinion affirming the trial court, the Missouri Court of Appeals stated the following:

> There was sufficient evidence in this case from which a reasonable juror could find that [Petitioner] was the man that attacked Victim, to wit: Victim testified that the dress she wore to the party the night of the attack was clean. After the attack, Victim's dress had several semen stains on the back skirt area. DNA tests confirmed the semen came from [Petitioner].
>
> [Petitioner] points out that the nurse and physician who treated Victim at the hospital after the attack both testified that Victim told them that semen could possibly be present on her dress and underwear from a prior voluntary sexual encounter.
>
> Contradictions within a witness' testimony do not inherently make the evidence insubstantial. State v. Tomlin, 864 S.W.2d 364, 366 (Mo. App. E.D.1993). The testimony of a single witness is sufficient to support a conviction even if the testimony of the witness is inconsistent. Id. Inconsistencies in a victim's story related to non-essential details do not destroy the submissibility of the case. Id. For evidence to be disregarded under the destructive contradictions rule the inconsistencies and contradictions must be "so diametrically opposed to one another as to preclude reliance thereon and rob the testimony of all probative force." Id.

> On the night Victim was examined at the hospital, after being twice beaten unconscious and raped, her recollection as to whether or not her dress was clean when she put it on that evening is not so diametrically opposed to her later testimony that it was in fact clean, so as to preclude reliance thereon and rob her testimony of all probative force. To suggest otherwise would be unduly harsh and callous. In any event, the inconsistencies in Victim's testimony regarding the condition of her dress the night she wore it to the party were for the jury to resolve. Tomlin, 864 S.W.2d at 366. This tenet applies as well to [Petitioner's] complaints about the inconsistencies in testimony between Victim and her fellow partygoer Billie Jo Smith (Smith) as to what time Victim left the party and whether Smith told Victim not to walk home alone or not; and as to whether it had been a year or a week and a half since Victim had had sexual relations. Furthermore, these were not "gross inconsistencies and contradictions" nor did they bear on an issue essential to the case. Tomlin, 864 S.W.2d at 366.
>
> [Petitioner] next argues that Victim picked another man out of a photographic line-up as someone resembling her attacker. [Petitioner] was not present in this lineup. Officer Oliver testified that the man picked by [Petitioner] looked very similar to [Petitioner]. In any event, this evidence does not invalidate [Petitioner]'s conviction, but rather was for the jury to consider and on appeal we do not consider evidence or inferences contrary to the jury's verdict. [State v. Salter, 250 S.W.3d 705, 710 (Mo. banc 2008).]
>
> The Court of Appeals does not determine credibility of witnesses, resolve conflicts in testimony, or weigh evidence, as these tasks are quite properly left to the jury. State v. Butler, 24 S.W.3d 21, 27 (Mo. App. W.D. 2000).

Resp't Ex. E at 4-5.

The Missouri Court of Appeals applied the correct standard under clearly established law. This Court agrees that the evidence before the trial court was sufficient that "*any* rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original). And the appellate court properly left credibility determinations of the witness's statements to the jury. As a result, Petitioner is not entitled to relief on ground one of the petition.

    2.    Ground Two

In ground two of the petition, Petitioner argues that the trial court erred in overruling his motion for judgment of acquittal because there was insufficient evidence showing that Petitioner had sexual intercourse with Victim as the evidence created serious doubt that any penetration occurred. Petitioner, relying on his state appellate brief, argues:

> Most of the evidence indicates that there was no penetration. [Victim] did not feel any penetration. All she felt was the tip of her attacker's erect penis around her stomach or vaginal areas. No semen was found inside her vagina or otherwise on her body. The only semen found was on her dress. This evidence alone would be insufficient to prove penetration.

Resp't Ex. C at 23. Petitioner further argues that the evidence of vaginal tears could have also shown that she engaged in consensual sex. He points out that during the rape examination Victim told a doctor and a nurse that she had had sexual intercourse about a week and a half prior to the rape. And Petitioner maintains that the presence of vaginal tears was consistent with such consensual sex.

-10-

Respondent argues that Petitioner has merely established that the evidence could permit conflicting interests. And Respondent states, correctly, that under Jackson, it is up to the jury to weigh the evidence and to decide how to resolve any conflicts in testimony or the evidence.

In its opinion affirming the trial court, the Missouri Court of Appeals stated the following:

> To convict [Petitioner] of forcible rape, the State had to prove that he had sexual intercourse with Victim by the use of forcible compulsion. [Mo. Rev. Stat. §] 566.030(1). "Sexual intercourse" consists of "any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results." [Mo. Rev. Stat. §]566.010(4).
>
> There was sufficient evidence presented in this case that [Petitioner] had sexual intercourse with Victim. After [Petitioner] knocked Victim out, she woke up with him lying on top of her, saying something about removing her underwear. Victim could feel [Petitioner's] erect penis near her vaginal area, "at the point of getting ready to enter," in her own words. At this point, [Petitioner] knocked Victim unconscious again, and when she woke up, her underwear was completely removed from her body, and later [Petitioner's] semen was found on the back of the skirt area of her dress, where the top of her legs would be. Victim had recent vaginal tears, consistent with *recent trauma*, and she had not recently had sexual intercourse with anyone else.
>
> [Petitioner's] argument that none of his semen was found in Victim's vagina is merely a contrary inference that the jury was free to disregard. It certainly does not prove there was no penetration. Proof of ejaculation itself is not essential to establish that a rape occurred.

Resp't Ex. E at 5-6 (citations omitted; emphasis in original).

The Missouri Court of Appeals applied the correct standard, and its findings are reasonable. The jury did not act unreasonably in concluding that penetration occurred based on Victim's testimony and the presence of vaginal tears consistent with recent trauma. As a result, Petitioner is not entitled to relief on ground two of the petition.

3. Ground Three

In ground three of the petition, Petitioner argues that trial counsel was ineffective for failing to object to the prosecutor's alleged improper re-direct questioning of Detective Deborah Oliver, where Oliver compared Petitioner's photograph to that of Harold Jackson, whom the victim first identified as her attacker, and opined that that the two men looked alike.

Respondent argues that Petitioner has failed to demonstrate that counsel's failure to object was not a reasonable trial strategy or that he was prejudiced by the failure. Counsel testified in the evidentiary hearing before the motion court that Detective Oliver's testimony was consistent with the defense theory at trial, which was to argue that Victim had consensual sexual intercourse in return for drugs a week before the attack and that another person, such as Harold Jackson, attacked Victim. Respondent further argues that, in light of the overwhelming evidence against Petitioner, he cannot demonstrate that the outcome of the trial would have been different but for counsel's failure to object.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was both deficient and prejudicial. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In this context, however, demonstrating deficient and prejudicial conduct is not enough. To prevail on an ineffective assistance of counsel claim in a § 2254 case, a Petitioner

> must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-99 (2002).

In its opinion affirming the motion court, the Missouri Court of Appeals stated the following:

> At the evidentiary hearing on [Petitioner's] PCR Motion, Counsel and an attorney who had assisted Counsel at trial (Assistant Counsel) testified. Both Counsel and Assistant Counsel testified that Counsel did not object to the prosecutor's line of questioning [regarding the physical similarity between Petitioner and Harold Jackson] because such questioning was not harmful to the defense theory at trial, which was that [Petitioner] and Victim had engaged in consensual oral sex in exchange for drugs. Counsel testified that the prosecutor's questioning and Detective Oliver's testimony "seemed to support or theory of the case," which was that Victim "was raped by somebody else," possibly Jackson, after Victim had "a consensual sexual relationship with [Petitioner.]" Counsel also explained that the circumstances surrounding the crime, i.e., Victim had been walking alone late at night in an area known for drug trafficking, along with the Victim's physical appearance, i.e., thin, haggard, and no teeth, might cause a reasonable jury to believe that Victim was involved

-13-

with illegal drug use and traded oral sex for drugs. Counsel adopted this theory because DNA analysis had revealed that [Petitioner's] semen was present on Victim's dress, and Counsel did not believe [Petitioner] could dispute that scientific evidence. In its judgment, the motion court found that, given the evidence and the defense theory at trial, Counsel was not ineffective for failing to object to the prosecutor's line of questioning, and the failure to object did not prejudice [Petitioner]. We agree.

Resp't Ex. I at 5-6.

The Missouri Court of Appeals' application of Strickland to the facts of the case was not objectively unreasonable. Counsel articulated a trial strategy that did not require an objection to Detective Oliver's testimony. And in light of the overwhelming evidence against Petitioner – the DNA evidence, the presence of vaginal tears consistent with recent trauma, and Victim's testimony – Petitioner has failed to demonstrate that the outcome of the trial would have been different if counsel had made the objection. As a result, Petitioner is not entitled to relief on ground three of the petition.

    4.    Ground Four

In ground four of the petition, Petitioner argues that trial counsel was ineffective for failing to object and to request a mistrial when Detective Oliver stated that Petitioner had told her he stopped using drugs at the end of 2004 but had gone to jail twice in 2005 because such testimony constituted evidence of prior and uncharged crimes and bad acts.

Respondent argues that counsel's failure to object was consistent with the defense theory at trial and that, in light of the evidence at trial, Petitioner has failed to demonstrate Strickland prejudice.

In affirming, the Missouri Court of Appeals stated:

Prior to trial, the State filed a motion *in limine* to exclude evidence of self-serving statements [Petitioner] had made to police in which [Petitioner] speculated about the reason his semen had been found on Victim's dress on the ground that the statements were hearsay. [Petitioner] had admitted to Detective Oliver that he occasionally traded drugs for sex but had claimed that he did not recognize Victim as a person with whom he had made such a trade. Counsel opposed the State's motion *in limine* on the ground that, although [Petitioner]'s statements were hearsay, the statements bore sufficient indicia of reliability while supporting his claim that he did not rape Victim. After a hearing, the trial court denied the State's motion *in limine* and ruled that all of [Petitioner]'s statements to police regarding his drug use would be allowed into evidence. The trial court specifically stated that it would not allow Counsel to "pick and choose" which of [Petitioner]'s statements regarding his drug use would come into evidence.

During opening statements, Counsel told the jury that [Petitioner] was a cocaine user and a small-time drug dealer in 2004 and prior to 2004. Counsel also asserted that Victim had performed oral sex on [Petitioner] in return for drugs and that [Petitioner] "occasionally did this, and he [did] not deny that." Later, Detective Oliver testified that [Petitioner] had told her he customarily traded drugs for oral sex with "hundreds of chicks" and that he was "on powder cocaine" in 2004 but that he had "stopped doing everything, meaning drugs, at the end of 2004." Detective Oliver also testified that [Petitioner] had told her he "went to jail twice in 2004." Counsel did not object to Detective Oliver's testimony.

At the hearing on [Petitioner]'s PCR Motion, Counsel testified that she did not object to Detective Oliver's testimony about [Petitioner]'s drug use and jail time because of the trial court's pre-trial ruling on

> the State's motion *in limine*, which was an all-or-nothing proposition. Counsel also testified that, in her opinion, [Petitioner]'s statements to Detective Oliver buttressed the defense theory that [Petitioner] did not rape Victim but traded drugs for oral sex. In its judgment, the motion court found that Counsel had the difficult task of offering a reasonable explanation for the presence of [Petitioner]'s semen on Victim's dress while at the same time maintaining that he had not had intercourse with Victim. The motion court further found the defense theory of a consensual oral-sex-for-drugs encounter "was the most plausible explanation that existed," and the explanation was supported by [Petitioner]'s own statements to police regarding his past experience with drugs; thus, Counsel's failure to object to Detective Oliver's testimony constituted sound trial strategy. We agree.
>
> Under the circumstances, Counsel had valid reasons for not objecting to Detective Oliver's testimony. Undeniably, Detective Oliver's testimony about [Petitioner]'s comments supported the defense theory at trial. Furthermore, even if Counsel had objected to Detective Oliver's statements concerning [Petitioner] going to jail twice in 2004, the objection would not have been meritorious because the trial court had informed Counsel that it would not pick and choose between [Petitioner]'s statements; if [Petitioner]'s statements about trading oral sex for drugs were admitted into evidence, [Petitioner]'s statements regarding his drug use and about going to jail also would be admitted. Point denied.

Resp't Ex. I at 8-9.

The decision of the Missouri Court of Appeals was not unreasonable. Trial counsel had the unenviable task of explaining the presence of Petitioner's DNA on Victim's dress, and the theory of exchanging drugs for oral sex was a reasonable strategy to adopt in such circumstances. Moreover, an objection would have been overruled because of the court's decision in the motion *in limine* hearing. And Petitioner failed to demonstrate that the outcome of the trial would have been

different but for the failure to make an objection. As a result, Petitioner is not entitled to relief on ground four of the petition.

5. Ground Five

In ground five of the petition, Petitioner argues that trial counsel was ineffective for failing to object and to request the trial court to instruct the jury to disregard the prosecutor's closing argument regarding the fact that Victim had to be deposed questioned, and "undergo vigorous nitpicking" in the courtroom, which improperly appealed to the jurors' passions and prejudices.

Respondent argues that the Missouri Court of Appeals' decision was not unreasonable. Counsel testified that she did not object because such objections during closing arguments are usually overruled and that she did not want to draw attention to negative facts. Respondent argues that this constitutes reasonable trial strategy, and moreover, that Petitioner failed to demonstrate prejudice.

Remarking on counsel's strategy, the Missouri Court of Appeals stated:

> Here, the record reveals that Counsel's decision not to object to the prosecutor's rebuttal closing argument was reasonable trial strategy. Although Counsel believed the prosecutor's statements were inaccurate and mischaracterized her treatment of Victim, based upon her years of experience and practice before the trial court, Counsel also believed that an objection to the prosecutor's statements would have been summarily overruled and would have harmed [Petitioner's] case by drawing attention to negative facts. Consequently, Counsel will not be found ineffective for pursuing this reasonable trial strategy as opposed to another, even if objecting to the prosecutor's rebuttal closing argument also would have been a reasonable strategy.

Resp't Ex. I at 10.

This Court finds the appellate court's decision to be reasonable. Counsel articulated a sound strategy for not objecting to the statements. And counsel's strategy was not objectively unreasonable, in light of the leeway given to prosecutors during closing arguments. See e.g., Donnelly v. DeCristoforo, 416 U.S. 637, 642-43 (1974) (to deprive defendant of due process, prosecutor's comment in closing argument must have "by itself so infected the trial with unfairness as to make the resulting conviction a denial of due process."). As a result, Petitioner is not entitled to relief on ground five of the petition.

**Conclusion**

For these reasons, Petitioner is not entitled to federal habeas relief. Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Khaimov v. Crist, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus, the Court will not issue a Certificate of Appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DISMISSED**.

**IT IS FURTHER ORDERED** that no certificate of appealability shall issue.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 10th day of July, 2013.

                          /s/ Nannette A. Baker  
                          NANNETTE A. BAKER  
                          UNITED STATES MAGISTRATE JUDGE